*JUDGE CROTTY*

# 11 CV 0542

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

KRIS SERGENTAKIS,

                   Plaintiff,

      -against-

THE LEUKEMIA & LYMPHOMA SOCIETY, INC.;
JOHN EHLER WALTER, a/k/a "John Walter",
   individually, personally and as CEO of
   THE LEUKEMIA & LYMPHOMA SOCIETY, INC;
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP; and
HOLLAND AND KNIGHT LLP,

                   Defendants.

-----------------------------------------------------------x

**COMPLAINT**

**Jury Trial Demanded**

**PLAINTIFF** KRIS SERGENTAKIS, appearing *pro se*, for his complaint respectfully alleges

upon knowledge as to his own facts and upon information and belief as to all other matters:

## NATURE OF ACTION

    1.     This is an action for compensatory and punitive damages, proximately the

result of a conspiracy jointly engaged in by the Defendants for violations of Plaintiff's rights as

guaranteed by reason of the First and Fourteenth Amendments to the United States Constitution,

42 U.S.C § 1983.

## JURISDICTION AND VENUE

    2.     The Court's federal question jurisdiction is invoked pursuant 42 U.S.C. § 1983 and

is founded on Title 28 U.S.C. §§1331, 1343. This Court has supplemental jurisdiction over all

state constitutional and state law claims pursuant to 28 U.S.C. § 1367(a). The deprivation of

rights alleged below were committed within the district of the United States District Court, Southern District of New York.

## THE PARTIES

3.    **Plaintiff KRIS SERGENTAKIS** is a citizen of the United States and at times relevant, a resident of the City and State of New York. At all times relevant, Plaintiff has been the administrator of New York City based internet websites dealing with, among other things, the public's concern over non-profit organization related fraudulent activity. Plaintiff is also the former print and production manager for Defendant The Leukemia & Lymphoma Society, Inc.

4.    **Defendant THE LEUKEMIA & LYMPHOMA SOCIETY, INC.** (hereinafter "LLS") is a New York State Domestic Not-for-Profit Corporation with offices at 475 Park Avenue South, 8th floor, New York, New York 10016, and with over 100 other "chapter" offices in many cities throughout the United States. The New York State Department of State, Division of Corporations, identifies LLS's legal process address as: THE LEUKEMIA & LYMPHOMA SOCIETY, INC., 600 Third Avenue, New York, New York 10016. At all times relevant, Defendant LLS has solicited and received public donations well in excess of a QUARTER BILLION DOLLARS- at all times relevant, monies exceeding Two Hundred and Fifty Million Dollars ($250,000.00+) per year. LLS professes to assist certain cancer related patients and research.

5.    Defendant **JOHN EHLER WALTER**, a/k/a JOHN WALTER (hereinafter "WALTER") is a citizen of the United States and at all times relevant, and upon information and belief, a resident of the State of New York within the jurisdictional boundaries of the District Court for the Southern District of New York. At all times relevant, WALTER is believed to have received and continues to receive a compensation package from LLS in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00). WALTER has also, upon information and belief, "arranged" the purchase of a 200 foot yacht, paid for with donated Defendant LLS monies, largely for his own personal use.

6.    Defendant **SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP** is a law firm located at 4 Times Square, New York, New York 10036, and as complained herein, a "hired gun" of Defendants LLS and Walter to violate Plaintiff's rights, *inter alia*.

7.    Defendant **HOLLAND AND KNIGHT LLP** is a law firm located at 31 West 52nd Street, New York, New York 10019, and as complained herein, a "hired gun" of Defendants LLS and Walter to violate Plaintiff's rights, *inter alia*.

## THE FACTS

8.    In or about April 2010, Plaintiff began administering an internet website called **www.LeukemiaScandal.Com** - dealing with, among other things, the Plaintiff's and public's concern over non-profit organization related, unconscionable, improper, illegal and unethical activities by Defendants.

**9.**    The Internet is a uniquely democratic public forum and a medium through which any individual can immediately, effectively and cost efficiently transmit, disseminate and broadcast his or her messages to millions of other people all over the world.

**10.**    A variety of for-profit and not-for-profit entities enable individuals such as Plaintiff to access and communicate over the Internet. Such entities are "electronic service providers" because they provide individuals with the ability to send or receive electronic communications. Such entities include not only what are called "Internet service providers," but also universities, businesses, public interest organizations, and libraries. Debate on the Internet is uniquely uninhibited and robust.

**11.**    There came a time in 2010 when Defendant WALTER apparently became upset over Plaintiff's communication via his **www.LeukemiaScandal.Com** website over the Internet of a known fact that Defendant John Walter had admitted to Plaintiff in Defendant Walter's office in 2003 that he (John Walter) had been arrested for child molestation. (***NOTE:*** Shortly after John Walter admitted that he had been arrested for child molestation, Walter plotted a frame-up of Plaintiff, including: **(a)** physical threats upon Plaintiff by law enforcement personnel to accept a commercial bribery "plea" that resulted in Plaintiff's improper incarceration; **(b)** threats to inside LLS witnesses to withhold information from criminal investigators so as to set-up and frame Plaintiff; and **(c)** the improper withholding of prosecutorial "evidence." As the commercial bribery component is still under appropriate review, investigation, etc., it is **NOT** now part of this complaint.)

12.     There also came a time in 2010 when Defendant Walter apparently became upset over Plaintiff's communication via his **www.LeukemiaScandal.Com** website over the Internet of known facts, of which Plaintiff had "inside" information, involving alleged widespread misuse of tens of millions of dollars of donated money to LLS, and alleged improper kickbacks to, and demanded by, John Walter from various vendors throughout the United States, wherein, in fact, one particular LLS chapter is alleged to have had a "special arrangement" with John Walter, wherein involved parties improperly and personally profited at the expense of donated monies meant to assist people with Leukemia and Lymphoma.

13.     On or about late Wednesday night, September 29, 2011, Plaintiff's **www.LeukemiaScandal.Com** website was suddenly and without warning attacked by paralyzing computer viruses.

14.     Commencing during and about the summer of 2010, and continuing thereafter, Defendants, with specific purpose, planned a malicious and calculated attack on Plaintiff's Constitutional Rights by improperly threatening Plaintiff's website provider, Yahoo, for the sole purpose to violate Plaintiff's Constitutional rights by disabling **www.LeukemiaScandal.Com,** the Plaintiff's owned and operated website, thereby unlawfully denying plaintiff access to the Internet.

15.     In or about late 2010, Defendants attempted to pressure a federal judge into violating Plaintiff's Constitutional Rights. That SDNY federal judge specifically denied the

Defendants' illegal attempt to violate Plaintiff's Constitution Rights. In fact, the letter sent to the federal *Judge* at the direction of the Defendants, was hidden from Plaintiff, but subsequently provided (K.5)

to him by a person close to Defendant Walter, but appalled by the defendants' actions and (E.5)

Walter's behavior (both Walter's admitted *arrest* child molestation and his threats and actions to violate

Plaintiff's constitutional rights). (Upon information and belief, the Defendants further used the

Defendant law firms as "hired guns," at the direction of LLS and Walter, in an attempt to

improperly coerce certain judges within and about the State of New York to violate Plaintiff's

constitutional rights by way of seeking a restraining order. Notably, no judge agreed to be used

for such improper purposes.)

16.    On or about late 2010, Plaintiff's **www.LeukemiaScandal.Com** website was

shut down by an improper complaint filed with the Yahoo Internet website hosting company by

the Defendants, all while using the donated monies of LLS to: **(a)** advance such unconstitutional

acts; and **(b)** to strong-arm such unconstitutional desires with the perceived strength and abusive

power of two large Manhattan law firms, acting as "hired guns".

17.    In or about January of 2011, the Defendants threatened the iPower hosting service

forcing it to immediately remove, without notice or warning, the Plaintiff's

**www.LeukemiaScandal.Com** website, thereby denying him access to the Internet. The threats

to iPower were improper and backed with hundreds of millions of dollars of donated LLS

monies and the chilling pressure of a large law firm promising years of litigation. So chilled and

disgusted was the legal team at iPower that they (iPower) provided their customer (the plaintiff)

with all the paperwork, an event that outraged the defendants and that brought more improper threats.

18.     In that connection and pursuant to a coordinated action orchestrated by LLS and Walter, other Defendants and possibly assisted, directly or indirectly, by certain Members of the Board of Directors of LLS, the illegal and hateful conduct intensified.  These unconstitutional actions were motivated in whole and/or in substantial respect by the truthful and substantive content of the Leukemia Scandal website concerning the admitted arrest of John Walter for actions concerning improper sexual activity with one or more minors (the child molestation).  LLS and Walter apparently became more upset as constitutionally protected complaints were made known by leukemia and lymphoma patients and family members who had been wronged by LLS and Walter.

19.     By way of contrast, websites and publications favorable to the Defendants, including LLS, have never, upon information and belief, been attacked or shut down with false allegations.  Such selective use of reported truth has violated plaintiff's constitutional rights.

20.     As a proximate result of Defendants' actions, Plaintiff was confronted and "warned" (KS.) by various law enforcement officials to "take down the www.LeukemiaScandal.Com  website."  The threats included "promises of arrest and incarceration" in the event the websites were not taken down.

21.     As a result of the Defendant's conduct, Plaintiff has been caused to suffer repeated violations of his rights as guaranteed by the First and Fourteenth Amendments to the

United States Constitution, emotional upset, public embarrassment, public humiliation, shame, anxiety, and to otherwise render him sick and subject of severe emotional distress.

## COUNT I

### (42 U.S.C. § 1983; First Amendment )

22. Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

23. As described above, Plaintiff engaged in speech which was distributed via the Internet through his **www.LeukemiaScandal.Com** website.

24. Plaintiff's speech constituted speech on a matter of public concern related to the past and current illegal activities of Defendant Walter and the LLS. (KS)

25. Plaintiff's speech constituted speech protected by the First Amendment.

26. Plaintiff acted in good faith in engaging in such protected speech.

27. Plaintiff had every right to engage in such speech via the Internet.

28. Defendants knew or should have known that Plaintiff's speech via the Internet was and is protected under the Constitutions of the United States and New York State.

29. Defendants' illegal conduct as described above, including, without limitation, Defendants' acting to force internet service providers to take down Plaintiff's **www.LeukemiaScandal.Com** website and/or refusing to host the Plaintiff's website, forcing Plaintiff's to cease the distribution and dissemination of information concerning the Defendants, thereby interfering with Plaintiff's ability to disseminate information via his **www.LeukemiaScandal.Com** website through the Internet.

30. Plaintiff's speech was the substantial and motivating factor in the adverse actions taken by Defendants against Plaintiff.

31. By their acts as described above, Defendants have retaliated against Plaintiff in violation of Plaintiff's rights under the First Amendment of the United States Constitution and Article 1, Section 8 of the Constitution of the State of New York for engaging in protected speech on a matter of public concern – including, among other matters, the illegal actions of Defendants Walter and LLS.

32. Defendants acted under color of state law and in bad faith.

33. As a result of Defendants' acts, Plaintiff has been and will be damaged in an amount of at least $10 million in compensatory damages and a like amount in punitive damages to be set at trial.

## COUNT II

## (42 U.S.C. § 1983; First Amendment )

**34.**   Plaintiff repeats and realleges each and every allegation made in the foregoing

paragraphs as if fully set forth herein.

**35.**   Defendants' illegal conduct as described above, including, without limitation,

Defendants' acting to force internet service providers to take down Plaintiff's website and/or

refusing to host the Plaintiff's website, forcing Plaintiff's to cease the distribution and

dissemination of information concerning the Defendants, thereby interfering with Plaintiff's

ability to disseminate information via the Internet.

**36.**   Plaintiff's speech was the substantial and motivating factor in the adverse actions

taken by Defendants against Plaintiff.

**37.**   By their acts as described above, Defendants have retaliated against Plaintiff in

violation of Plaintiff's rights under the **First Amendment** of the United States Constitution and

Article 1, Section 8 of the Constitution of the State of New York for engaging in protected

speech on a matter of public concern.

**38.**  Defendants acted under color of state law and in bad faith.

10

**39.** As a result of Defendants' acts, Plaintiff has been and will be damaged in an amount of at least $10 million in compensatory damages and a like amount in punitive damages to be set at trial.

## COUNT III

### (42 U.S.C. § 1983; Due Process)

**40.** Plaintiff repeats and realleges each and every allegation made in foregoing paragraphs as if fully set forth herein.

**41.** Plaintiff's position as the owner and operator of an Internet site constituted a property and liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**42.** Defendants' acts constituted a forced interruption of and interference with Plaintiff's Internet website and interfered with Plaintiff's ability to disseminate material of his choice via the Internet, and thereby deprived Plaintiff of a property and/or liberty interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**43.** Defendants by their acts described above have deprived Plaintiff of protected property and liberty interests in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article 1, Section 6 of the Constitution of the State of New York.

44. In their acts as described above Defendants acted in bad faith.

45. Defendants acted under color of state law.

46. As a result of Defendants' acts, Plaintiff has been and will be damaged in an amount of at least $10 million in compensatory damages and a like amount in punitive damages to be set at trial.

## COUNT IV

### (Breach of Contract)

47. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

48.     Upon information and belief, Defendants have purposely and maliciously interfered with Plaintiff's contracts with its electronic service providers and Internet service providers including, but not limited to, Yahoo and iPower hosting services, causing them to cancel their service contracts and refuse to disseminate  information provided to, acquired by and created by the Plaintiffs.

49.     As a result of Defendants' conduct constituting breach of contract, Plaintiff has been and will be damaged in an amount of at least $10 million in compensatory damages and a like amount in punitive damages to be set at trial.

## COUNT V
### (Infliction of Emotional Distress)

**50.**    Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

**51.**    Defendants' acts were under all the attendant circumstances described above, punitive, extreme, outrageous.

**52.**    In forcing plaintiff's ~~resignation~~ *denial of constitutional rights (KS)*, denying h~~er~~is application *internet* and jeopardizing *(KS)* Plaintiff's professional and  personal well-being, Defendants intentionally and/or recklessly caused severe emotional distress to Plaintiff.

**53.**    As a result of Defendants' conduct, Plaintiff has been and will be damaged in an amount of at least $10 million in compensatory damages and a like amount in punitive damages to be set at trial.

## COUNT VI
### Conspiracy

**54.**    Plaintiff repeats and realleges each and every allegation made in the foregoing paragraphs as if fully set forth herein.

**55.**    Plaintiff has suffered direct harm and damages, as stated *supra*, as a direct result of the coordinated acts of Defendants in concert with others constituting conspiracy. As

the result of Defendants' conduct, Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages.

56.  Plaintiffs are entitled to an award against Defendants, general, special, compensatory damages in the amount of at least $10 million and for punitive damages in an amount to be determined by the jury.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)  issue a declaratory judgment that Defendants' conduct, acts, policies, practices and procedures complained of herein violated Plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution and the New York Constitution;

(b)  issue a preliminary and permanent injunction enjoining and restraining Defendants from committing and engaging in conduct or adopting acts, policies, practices and procedures complained of herein that violated Plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution and the New York Constitution and permanently enjoining Defendants from interfering with Plaintiff's **www.LeukemiaScandal.Com** and other websites and all other communication properties, means and devices.

(c)  award Plaintiff compensatory damages for injury to his career and reputation, pain, suffering and emotional distress, in an amount of at least $10 million under each of six counts to be determined at trial;

(d)  award Plaintiff punitive damages in an amount of at least $10 million under each of six counts to be determined at trial;

(e)  award Plaintiff's attorneys fees, together with costs and disbursements; and

(f)  grant such additional relief as the Court deems just, right and proper.

## JURY DEMAND

## PLAINTIFF DEMANDS TRIAL BY JURY

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he is the Plaintiff in the above action, that he has read the above complaint and that the information contained in the complaint is true and correct, 28 U.S.C. § 1746; 18 U.S.C § 1621.

**Dated:** New York, N.Y.
           January 26, 2011

Kris Sergentaksis, *pro se*
344 West 38th Street, 4th floor
New York, New York 10018
*Telephone:* 347-595-3613
*email:* krisSergentakis@gmail.com